UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTEGRATED ADVERTISING LABS,
LLC,

 Plaintiff,

v.              Case No: 8:22-cv-487-KKM-CPT

REVCONTENT, LLC,

 Defendant.
_____

<u>**ORDER**</u>

 Integrated Advertising Labs, LLC, sues Revcontent, LLC, for infringing U.S. Patent No. 9,286,622 ('622), U.S. Patent No. 9,652,781 ('781), and U.S. Patent No. 10,147,121 ('121). (Doc. 1) Challenging the validity of the asserted patents under 35 U.S.C. § 101, Revcontent moves (Doc. 35) for judgment on the pleadings.

**I. BACKGROUND**

 Integrated Advertising Labs, LLC, is wholly owned by Nativo, Inc. (Doc. 1 ¶ 1), which organized IAL to issue patent licenses and receive revenue from the licensed patents—the '622 patent, the '781 patent, and the '121 patent. (Doc. 1 ¶ 7) However, Nativo is not a party to this action. (Doc. 1)

 Each patent specifies a "press release distribution system" designed for advertising on websites colloquially known as "forum sites" (or, sometimes, "fan

sites"). ('622 at 1:19–2:46) [1] The specified system simultaneously distributes an advertisement to many forum sites; tracks user engagement; splits advertising revenue among forum sites, ('622 at 3:29–43, 16:9–13); and allegedly improves conventional advertisements by "placing sponsored content among non-sponsored content." (Doc. 1 ¶ 15)

Revcontent is one of IAL's competitors. Revcontent created a platform that, like IAL's platform, distributes and places advertising on forum sites. IAL alleges that Revcontent infringes claim 13 of the '622 patent, claim 8 of the '781 patent, and claim 1 of the '121 patent. (Doc. 1 ¶¶ 28, 38, 48)

As IAL acknowledges (Doc. 1 ¶ 20; Doc. 40 at 5–6), the patent examiner initially rejected the '622 patent because, "[t]he claims merely amount to the application . . . [of an] abstract idea (i.e. delivering advertisements) on a computer," (Doc. 40-4 ¶ 15) and because "the claims do not effect an improvement to another technology or technical field; the claims do not amount to an improvement to the functioning of a computer itself; and the claims do not move beyond a general link of the use of an abstract idea to a particular technological environment." (Doc. 40-4 ¶ 14) But the examiner concluded differently after IAL insisted that the claims describe an improved website display, "in which sponsored content is placed among non-sponsored content." (Doc. 40-6 at 7.) In other words, the examiner found that the '622

---

[1] As the plaintiff acknowledges in the complaint, "[t]he Asserted Patents are all related and share a common specification; thus, the citations to the '622 patent specification apply equally to all Asserted Patents." (Doc. 1 at 6 n.1)

patent claims a novel way to place advertisements in a list with posts native to the website. Revcontent moves for judgment on the pleadings and argues that each patent is invalid under 35 U.S.C. § 101. (Doc. 35)

## II.   LEGAL STANDARD

Under Rule 12(c), Fed. R. Civ. P., Revcontent may "move for judgment on the pleadings" after "the pleadings are closed." To succeed, Revcontent must prove that "there are no material facts in dispute" and that "the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). In determining whether a party is entitled to judgment on the pleadings, the non-movant's factual allegations—but not the non-movant's legal conclusions—are assumed true. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Because "[p]atent eligibility under § 101 is a question of law that may involve underlying questions of fact," a determination of patent validity is possible occasionally on the pleadings. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

"The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). The asserted claims must describe a patentable invention. *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363–64 (Fed. Cir. 2021). A detailed specification cannot rescue a claim that fails to describe a patentable invention. 996 F.3d at 1363.

## III.   ANALYSIS

### A. Claim 13 and claim 22 of the '622 patent are representative.

Revcontent correctly argues (Doc. 35 at 2 n.1) that claim 13 and claim 22 of the '622 patent are representative of the '781 patent, the '121 patent, and the '622 patent's other claims. A claim is "representative" of other claims if it is "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Furthermore, "[c]ourts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Claim 13 and Claim 22 of the '622 patent are substantially similar and linked to the same abstract idea as the other claims and patents. The '622 patent claims:

> 13. A method of electronically delivering advertisements as sponsored news content to a plurality of web sites that each includes non-sponsored content, the method comprising;
>
> > electronically receiving the sponsored news content by a server computer from one or more advertisers over a communications network;
> >
> > electronically distributing the sponsored news content by the server computer to a related one or more of the web sites over the communications network;
> >
> > electronically receiving the sponsored news content by the one or more web sites from the server computer over the communications network;
> >
> > electronically posting the sponsored news content among the non-sponsored content at each of the related one or more of the web sites;
> >
> > electronically tracking one or more of impressions, clicks, click-through rate, or user actions with respect to the sponsored news content at the related one or more of the web sites;

> electronically monitoring user data or user activity at the related one or more of the web sites; and
>
> delivering a specific sponsored news content to a particular user utilizing a particular one of the monitored user data or user activity, wherein revenue generated from the delivery of the specific sponsored news content is shared with the related one or more of the web sites,
>
> wherein the sponsored news content is not a banner advertisement,
>
> wherein when the sponsored news content is displayed, it is displayed separately from any banner advertisement and contiguously together with at least some of the non-sponsored content appearing on the page to scroll together with the at least some of the non-sponsored content such that the sponsored news content is in a fixed, position relative to at least some of the contiguously displayed non-sponsored content,
>
> wherein a time period during which the sponsored news content is posted at the related one or more of the web sites is limited,
>
> wherein a frequency at which the sponsored news content is displayed for each user is limited, and
>
> wherein a plurality of features of the sponsored news content are substantially the same as a corresponding plurality of features of the contiguous non-sponsored news content, and at least one feature of the sponsored news content differs from or is in addition to the corresponding feature of the non-sponsored news content in order to distinguish the sponsored news content from the non-sponsored news content.
>
> 22. The method of claim 13, further comprising electronically posting the sponsored news content among the non-sponsored content at each of multiple related web sites, and electronically monitoring user data or user activity at each of the multiple web sites.

('622 at 15:56–36, 16:61–65) Simply stated, claim 13 and claim 22 of the '622 patent describe a targeted advertising tool that allows advertisers to easily place advertisements on many websites. Also, IAL's platform requires revenue sharing and arranging advertisements contiguously with non-sponsored content. Although the other claims do not use the same words, each asserted patent encompasses the

technology detailed in claim 13 and claim 22 of the '622 patent. ('622 at 14:26–16:65, '781 at 14:54–16:63, '121 at 14:53–16:56) And the '622 patent, the '781 patent, and the '121 patent contain the same specification of IAL's technology. As IAL acknowledges, "[t]he Asserted Patents are all related and share a common specification; thus, the citations to the '622 patent specification apply equally to all Asserted Patents." (Doc. 1 at 6 n.1)

Although IAL objects (Doc. 40 at 11–12) to characterizing claim 13 and claim 22 as representative, IAL fails to identify even one distinction between claim 13 and claim 22 of the '622 patent and the other asserted patents and claims. *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . ."); *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *4 (Fed. Cir. July 14, 2021) (holding that a claim was representative because the plaintiff "fails to identify any relevant claim limitations, alone or in combination, that the [district] court failed to consider."). Furthermore, although IAL never directly asserts that claim 13 of the '622 patent is representative, IAL utilizes claim 13 as a representative example to illustrate the claims of the other asserted patents. (Doc. 1 ¶¶ 17–22.) Because IAL fails to explain the distinctive significance of the other patents and claims, claim 13 and claim 22 of the '622 patent are representative of the other claims.

### B. Patent validity is sometimes resolved by the pleadings.

Because patent validity is a question of law, "in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a [Rule 12] motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016). However, the determination of validity requires more if a factual dispute or a claim construction dispute appears. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

IAL argues that Revcontent's Rule 12 motion is improper because "[t]he presumption of validity creates a fact issue." (Doc. 40 at 9–10) Of course, under 35 U.S.C. § 282, a patent enjoys the benefit of a presumption of validity. However, the presumption derives only from "the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). If the presumption of validity creates a factual dispute, a patent is unassailable by a motion for judgment on the pleadings. 35 U.S.C. § 282; *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 (2011). However, patents are regularly invalidated by judgments on the pleadings.[2]

---

[2] *See, e.g.*, *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363 (Fed. Cir. 2019); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016); *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520 (Fed. Cir. 2021); *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495 (Fed. Cir. 2020); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014).

Additionally, IAL asserts that "the Court cannot conclude, as a matter of law, that the claimed ordered combination was 'well-understood, routine, and conventional to a skilled artisan at the time of the patent.'" But a broad invocation of the "claim ordered combination" of three patents fails to identify anything not "well-understood, routine, and conventional" at the time of the patents. As explained below, IAL's patents claim only abstract ideas and lack an inventive concept.

Next, IAL argues that Revcontent's motion "is premature because the Court has not construed the asserted claims." (Doc. 40 at 10.) But "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). "In many cases, . . . evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs.*, 818 F.3d at 1373–74. Although claim construction is a prerequisite if there is a claim construction dispute relevant to the validity of the patent, *Aatrix Software*, 882 F.3d at 1125, neither party identifies a term requiring claim construction before judgment on the pleadings. (Doc. 35; Doc. 40); *see also Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) (determining patent validity based on the pleadings because "there is no claim construction dispute relevant to the eligibility issue"); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 n.1 (Fed. Cir. 2014) ("Cyberfone argues that claim construction must precede the § 101 analysis, but does not explain which terms require construction or how the analysis would change. It merely points

to claim language that we consider here. There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."). Because IAL fails to identify a disputed term requiring construction before judgment on the pleadings, (Doc. 40 at 10–11), Revcontent's motion is not premature.

### C. 35 U.S.C. § 101 and *Alice* invalidate the '622 patent, the '781 patent, and the '121 patent.

Under 35 U.S.C. § 101, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Section 101 also includes an exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quotation omitted).

*Alice*, 573 U.S. at 217–18 (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012)), prescribes two steps to identify a patent-ineligible claim. First, determine whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Alice*, 573 U.S. at 217. Second, if the claim is directed to a patent-ineligible concept, examine whether the patent claims an "inventive concept" that ensures "that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotation omitted).

Analyzing the validity of a patent under *Alice* requires accounting for the primary object of patent law; that is, promoting innovation. *Alice*, 573 U.S. at 216.

Monopolizing an abstract idea "might tend to impede innovation more than it would tend to promote it." *Mayo*, 566 U.S. at 71. Patent law should not "inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Alice*, 573 U.S. at 216 (quotation omitted).

### 1.    Step One

IAL's asserted patents fail the first step because they claim an abstract idea. Claim 13 and claim 22 of the '622 patent—the representative claims—discuss four main components of IAL's technology. The patent claims a targeted advertising platform, ('622 at 15:56–16:11), that allows for revenue sharing among many websites, ('622 at 16:11–13), and enables efficient advertising across many websites simultaneously. ('622 at 16:61–65) Furthermore, claim 13 limits IAL's patent to advertising placed on a website contiguously with non-sponsored content. ('622 at 16:14–24, 16:29–36) Each of these four components is an abstract idea.

Targeted advertising is an abstract idea because targeted advertising is a fundamental, routine, and enduring practice long used in marketing. *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015). For example, *Free Stream*, 996 F.3d at 1361–62, holds that a patent claimed ineligible concepts because the claims were directed to "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device." Like the patent in *Free Stream*, IAL's patent is directed to targeted advertising.

10

IAL's patent claims a method of posting and tracking advertisements to efficiently tailor marketing content to future customers. ('622 at 15:56–16:11) This is a patent-ineligible subject.

IAL emphasizes that the technology enables efficient advertising across a plurality of websites. (Doc. 40 at 14–15) However, to prove that the patents claim more than an abstract idea, IAL must prove that the technology "enables a computer . . . to do things [that the computer] could not do before." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020); *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016). To meet this threshold, IAL must identify language in the claims of the asserted patents that describes how IAL's technology improves computer functionality. *Free Stream*, 996 F.3d at 1363–64. If the claims invoke generic computer tools to implement an abstract idea, the patent is invalid. *Free Stream*, 996 F.3d at 1363–64; *Affinity Labs*, 838 F.3d at 1269–70; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096–97 (Fed. Cir. 2016).

Although the technology enables advertisers to market on a plurality of websites, the patent claims describe a system that adds only "conventional computer components to well-known business practices." *Affinity Labs*, 838 F.3d at 1270. Claim 13 asserts that IAL's technology uses a "server computer" to receive and distribute "sponsored news content" and to track "user data and activity." ('622 at 15:56–16:11) Claim 22 states that IAL's platform allows companies to place and monitor

11

advertisements on "multiple related websites." ('622 at 16:61–65) Instead of disclosing a novel and inventive mechanism that improves computer functionality, the claims "do no more than describe a desired function or outcome." *Affinity Labs*, 838 F.3d at 1269. "[T]he essentially result-focused, functional character" of the claim language is "a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). For instance, in *Free Stream*, 996 F.3d at 1363, the patent holder argued that the invention allowed "devices on the same network to communicate where such devices were previously unable to do so." But the asserted claims disclosed only that the invention operated by "piercing or otherwise overcoming a mobile device's security sandbox." 996 F.3d at 1363. The claims did not "describe how that result is achieved." 996 F.3d at 1364. Thus, *Free Stream*, 996 F.3d at 1364, held that the patent claimed an abstract idea because the claims did not "recite an improvement in computer functionality." 996 F.3d at 1364; *FairWarning*, 839 F.3d at 1096–97; *Affinity Labs*, 838 F.3d at 1269–70. Like the claims at issue in *Free Stream*, the claims in IAL's patent describe no improvement in computer functionality. The claims describe results, and the claims invoke generic computer tools to achieve those results.

Also, claim 13 describes revenue sharing, "wherein revenue generated from the delivery of the specific sponsored news content is shared with the related one or more of the web sites." ('622 at 16:11–13) But this claim describes an abstract idea because revenue sharing is "a fundamental economic practice long prevalent in our system of

commerce." *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *Content Extraction*, 776 F.3d at 1347 ("[C]laims directed to the mere formation and manipulation of economic relations may involve an abstract idea."). Although the claims describe the concept of revenue sharing through computer technology, "[s]tating an abstract idea while adding the words 'apply it with a computer'" is "not enough for patent eligibility." *Alice*, 573 U.S. at 223.

Lastly, IAL argues (Doc. 40 at 14–20) that the claims do not recite an abstract idea because the patents do not relate to traditional "banner advertisements." ('622 at 16:16–23) Instead, the patents claim sponsored content that appears contiguously with "non-sponsored content." ('622 at 16:16–23) IAL cites this limitation as the primary reason that the patent examiner reversed her initial objection to IAL's claims. (Doc. 40 at 17 (citing Doc. 40-5 at 8; Doc. 40-6 at 7)) But this limitation is directed to an abstract idea. A claim that purports to patent the notion of arranging information on a computer screen is a claim directed to an abstraction. *Customedia Techs., LLC*, 951 F.3d at 1364–65; *CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471, 475–76 (Fed. Cir. 2020) ("CardioNet's unified display may be very useful to physicians, but usefulness alone does not necessarily negate abstractness."). For instance, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed. Cir. 2014), holds that requiring users to view an advertisement before viewing copyrighted material is an abstract idea. The asserted patents claim advertisements that "scroll together" with "non-sponsored content such that the sponsored news content is in a fixed position relative to at least some of the

contiguously displayed non-sponsored content." ('622 at 16:19–23) This requirement claims a certain format for displaying advertisements on a website. Because the arrangement of displayed advertisements is an abstract idea, the asserted patents fail step one of *Alice*.

IAL insists (Doc. 40 at 14–15) that the asserted claims are akin to the valid patent claims in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), and *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). But the invention in *DDR Holdings*, 773 F.3d at 1257–59, allows a user to purchase a product from a third-party advertiser without leaving the host website. 773 F.3d at 1257–58. The invention in *DDR Holdings* is a new method of internet commerce, not just a new method of familiar targeted advertising. 773 F.3d at 1257–59. Furthermore, *DDR Holdings*, 773 F.3d at 1258, cautions:

> [N]ot all claims purporting to address Internet-centric challenges are eligible for patent. For example, in our recently decided *Ultramercial* opinion, the patentee argued that its claims were 'directed to a specific method of advertising and content distribution that was previously unknown . . .' But this alone could not render its claims patent-eligible. In particular, we found the claims to merely recite the abstract idea of 'offering media content in exchange for viewing an advertisement' . . .

IAL's claims are like the claims in *Ultramercial*, 772 F.3d at 714–16, because IAL's claims describe only targeted advertising. Comparatively, the patent in *DDR Holdings*, 773 F.3d at 1257–59, claims an invention that facilitates new forms of internet commerce.

Nor does *Bascom*, 827 F.3d 1341, support IAL's argument. In *Bascom*, the patent claimed an internet filter designed to prevent a user's viewing objectionable online

14

material. 827 F.3d at 1348. Although IAL cites *Bascom* to argue that the asserted claims "are not directed to an abstract idea" under step one of *Alice*, (Doc. 40 at 12, 15), *Bascom* actually holds that filtering internet content "is an abstract idea." 827 F.3d at 1348. Notably, *Bascom*, 827 F.3d at 1350, holds also that the internet filter satisfies step two of *Alice* because the patent describes "how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." But unlike the patent in *Bascom*, IAL's patents merely describe an abstract idea—targeted advertising, *Free Stream*, 996 F.3d at 1361–62; *Intell. Ventures I*, 792 F.3d at 1369—along "with the requirement to perform [the abstract idea] on the Internet, [and] to perform [the abstract idea] on a set of generic computer components." *Bascom*, 827 F.3d at 1350. Claim 13 states no more than that IAL's technology employs "a server computer" to engage in targeted advertising. ('622 at 15:57–67) "Such claims [do] not contain an inventive concept." *Bascom*, 827 F.3d at 1350. The internet filter in *Bascom* manifests a sufficiently inventive concept; IAL's patents fail to describe improvements adequate to confer patentability.

### 2. Step Two

Although the asserted patents fail step one of *Alice*, the patents remain valid if they claim an "inventive concept" that ensures "that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotation omitted). Step two of *Alice* examines "precisely . . . what the claim elements add to determine if they identify an inventive concept in the application of

15

the ineligible matter to which the claim is directed." *Customedia*, 951 F.3d at 1365. For example, *Customedia*, 951 F.3d at 1365–66, holds that a patent claiming a method of targeted advertising fails step two of *Alice* because "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor . . . Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea."

Like the patent in *Customedia*, the asserted patents fail step two of *Alice*, that is, the patents fail to "amount to significantly more" than an abstract idea. Instead, the claims merely restate abstract ideas. Claim 13 says that IAL's system uses "a server computer" to receive and distribute "sponsored news content." ('622 at 15:57–67) IAL's technology tracks "impressions, clicks, click-through rates, or user actions with respect to the sponsored news content." ('622 at 16:4–7) But these claims deliver no explanation of how IAL's system improves computer functionality. Instead, the claims restate traditional components of targeted advertising, which is nothing more than an instruction to "apply" an abstract idea. *Customedia*, 951 F.3d at 1365–66. The asserted patents claim both the platform's revenue sharing capability, ('622 at 16:11–13), and the platform's ability to operate on "multiple related web sites." ('622 at 16:61–65) However, the claims never describe how IAL's platform accomplishes these abstract ideas. ('622 at 16:11–13, 16:61–65); *Elec. Power Grp.*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent

16

feature of claims held ineligible under § 101."). Further, the claims limit IAL's patents to advertisements "displayed separately from any banner advertisement and contiguously together with at least some of the non-sponsored content." ('622 at 16:17–18) But this does not amount to "significantly more" than an abstract idea. *Alice*, 573 U.S. at 218. Instead, the claim describes the abstract idea of where to display an online advertisement. *Ultramercial*, 772 F.3d at 715–16. Because "the claims at issue amount to 'nothing significantly more' than an instruction to apply [an] abstract idea," *Alice*, 573 at 225–226, the asserted patents fail step two of *Alice*.

## IV.   CONCLUSION

The '622 patent, the '781 patent, and the '121 patent are invalid under 35 U.S.C. § 101 and *Alice*. Accordingly, Revcontent's motion (Doc. 35) for judgment on the pleadings is **GRANTED**. Revcontent's request (Doc. 42) for oral argument is **DENIED**. The clerk is directed to enter **JUDGMENT** in favor of Revcontent; to terminate any pending motion and deadline; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 8, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE